# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| SIBYL A. SATTERWHITE, | : | Case No. 3:11-cv-99 |
| Plaintiff, | | District Judge Thomas M. Rose |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSPPORTED BY SUBSTANTIAL EVIDENCE AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Sibyl Satterwhite ("Plaintiff") "not disabled" and therefore unentitled to Supplemental Security Income ("SSI"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 11), Plaintiff's Reply (doc. 12), and the administrative record (doc. 7).

## I. BACKGROUND

**A. Procedural History**

Plaintiff filed an application for SSI on December 6, 2006, alleging a disability onset date of November 21, 2006. Doc. 7-5 at PageID 143-45. Plaintiff claims she suffers from head and

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

musculoskeletal injuries, bi-polar disorder, chronic pain, arthritis, memory loss, and depression. *Id.* at PageID 161.

Following initial administrative denials of Plaintiff's application, she received a hearing before ALJ Thaddeus J. Armstead, Sr. on September 15, 2009. Doc. 7-2 at PageID 71-101. At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert, Suman Srinivasan. *See id.*

On October 23, 2009, the ALJ issued a written decision finding Plaintiff not disabled. *Id.* at PageID 54-70. Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since November 21, 2006, the application date (20 CFR 416.971 *et seq*).

2. The claimant has the following severe impairments: bipolar disorder depressed; antisocial personality disorder; post traumatic stress disorder history; effects related to the history of cocaine, heroine and cannabis dependence and abuse; and degenerative changes of the cervical and lumbar spine (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: simple and moderately complex tasks in a fairly static work environment with no supervisory work responsibilities or handling of complaints as a job function; no climbing ladders, ropes or scaffolds; occasional crouching and stooping; occasional overhead reaching; work alone away from others, but not in total isolation; no fast paced production quotas or strict time standards; avoid high work traffic job environment with occasional to less coworker traffic; and no loud-noise work environment.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on May 9, 1963. From the alleged disability onset date through the present claimant has been between 43 and 46 years old, which is defined as a younger individual (20 CFR 416.963)

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 21, 2006, the date the application was filed (20 CFR 416.920(g)).

*Id.* at PageID 59-70.

The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's non-disability finding the final administrative decision of the Commissioner. *Id.* at PageID 44-47; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this appeal on March 28, 2011. *See* doc. 2.

**B.     Plaintiff's Background**

Plaintiff was 46 years old on her alleged disability onset date and thus considered a "younger individual." *See* 20 C.F.R. § 416.963. Plaintiff obtained her GED in 1988. Doc. 7-6 at PageID 168. Her past relevant work was a motor vehicle assembler and telemarketer. Doc. 7-2 at PageID 92-93.

On July 7, 1998, Plaintiff was in an automobile accident and ejected from her vehicle fifteen to twenty feet.[2] *See* doc. 7-7 at PageID 235. Plaintiff lost consciousness, was transported via care-flight to Miami Valley Hospital, and hospitalized there for three weeks. *See* doc. 7-7 at PageID 222-300. She was diagnosed with multiple traumas; a closed head injury; and multiple fractures including a left L1-4 transverse process fracture, a rib fracture, a left clavical fracture, and a C-7 transverse process fracture, among numerous other injuries. *Id.* at PageID 232, 235.

While in the hospital, Plaintiff, for four to five days, experienced "paranoid delusions, believing the nurses were trying to kill her with medicines and began hearing voices of [her] mother and other family mothers as well as a voice unfamiliar to her telling her to kill herself." *Id.* at PageID 233, 236. A doctor concluded that Plaintiff was having post traumatic psychosis. *Id.* at PageID 236, 238. Plaintiff continues to experience paranoid delusions. *See, e.g.,* doc. 7-7 at PageID 389, 411, 418, 432; doc. 7-8 at PageID 493, 534, 578.

## II. APPLICABLE LAW

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When

---

[2] Plaintiff's friend was killed in this accident. *See* doc. 7-7 at PageID 350; doc. 7-8 at PageID 542. As a result, Plaintiff was charged with a third-degree felony for aggravated vehicular homicide. See doc. 7-5 at PageID 151-52; doc. 7-6 at PageID 205-06. However, that charge was dismissed on August 5, 1998, and she subsequently pled no-contest to a first-degree misdemeanor for vehicular homicide. *See id.*

substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the Commissioner has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.     "Disability" Defined**

To be eligible for SSI, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* A SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.     Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work that is available in the national economy?

20 C.F.R. § 416.920(a)(4).

C. **Mental Impairments**

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(1)(A). The five-step sequential evaluation outlined above applies as well to the evaluation of mental impairments. However, the regulations provide a special procedure for evaluating the severity of a mental impairment at steps two and three for an adult. 20 C.F.R. §404.1520a.

At step two, the ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment[]." *Rabbers*, 582 F.3d at 652-53. If so, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" in four areas, commonly known as the "B criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* at 653. The degree of limitation in the first three functional areas is rated on a five-point scale: none; mild; moderate; marked; and extreme. *Id.* The fourth functional limitation is rated on a four-point scale: none; one or two; three; and four or more. *Id.*

At step three of the sequential evaluation, the ALJ must determine whether the claimant's mental impairment(s) "meets or is equivalent in severity to a listed mental disorder." *Id.* at 653-54. A claimant whose mental impairment(s) meet the requirements of the Listings of Impairments, located at Appendix 1 to Subpart P of the regulations, will be deemed conclusively disabled. *Id.* If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC and proceed to steps four and five of the sequential evaluation process. *Id.*

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs, *see* doc. 9 at PageID 593-601; doc. 11 at PageID 614-619, and the Court will not repeat them here.

Plaintiff's asserts one assignment of error: the ALJ erred in rejecting her treating psychiatrist's opinion and in relying, instead, on the opinion of a non-examining, state agency consulting psychologist. *See* doc. 9 at PageID 602-08.

**A. Medical Opinions**

**1. Plaintiff's Treating Psychiatrist – Dr. Knight**

Plaintiff was treated by Shirlann Knight, M.D. at Day-Mont Behavioral Health Care Center from March 2007 through June 2009. Doc. 7-7 at PageID 389-91, 396-422; doc. 7-8 PageID 492-515, 526-48, 574-84. Dr. Knight completed two forms from the Bureau of Disability Determination (BDD). In August 2007, Dr. Knight opined that Plaintiff's work-related skills were as follows: she has a "limited" ability to remember, understand and follow directions due to decreased concentration and memory loss from the head trauma in her car accident; "poor to fair" ability to maintain attention because she is distracted by others, hears

7

voices, and has racing thoughts; has "some" difficultly with long or complicated tasks; has "some" social problems because she is anxious, paranoid and irritable; she may lose concentration and focus in a work setting; and she may have trouble with work pressures. Doc. 7-7 at PageID 389-390.

In May 2009, Dr. Knight completed interrogatories with respect to Plaintiff. Doc. 7-8 at PageID 540-48. Dr. Knight reported that she treats Plaintiff for schizoaffective disorder and polysubstance dependence, in remission. *Id.* at PageID 541. Dr. Knight noted that Plaintiff's former substance abuse was not a material factor to her mental impairments. *Id.* at PageID 542. Dr. Knight opined that Plaintiff did not have the ability to perform any of the listed work-related functions, *i.e.,* sustain attention and concentration at work to meet normal standards of work productivity and work accuracy; understand, remember and carry out simple work instructions without requiring very close supervision; behave in an emotionally stable manner; and complete a normal workday and work week without interruption from her impairments. *Id.* at PageID 540-48. Further, Dr. Knight opined that Plaintiff had "marked" difficulties in maintaining social functioning and "marked" deficiencies of concentration, persistence or pace. *Id.*

### 2. Non-Examining, State Consulting Source -- Dr. Haskins

Kristen Haskins, Psy.D. reviewed Plaintiff's treatment records, as requested by the BDD in January 2007. *See* doc. 7-7 at PageID 338-51. Dr. Haskins opined that Plaintiff had "mild" limitations in activities of daily living; and "moderate" limitations in social functioning and concentration, persistence, or pace. *Id.* at PageID 348. Dr. Haskins also completed a Mental RFC Assessment in which she opined that Plaintiff was "moderately" limited in eleven of twenty categories. *Id.* at PageID 352-55.

Dr. Haskins' opinions are flawed, however, and unsupported by objective evidence in the record. In reviewing Plaintiff's medical records, she refused to consider Plaintiff's mental impairments on the erroneous assumption that they arose from the commission of a felony and were thus barred from consideration pursuant to DI 23501.001.[3] *Id.* at PageID 350. Specifically, Dr. Haskins stated that Plaintiff's paranoid ideation "and all of her mental health problems [that] she alleges started due to this accident[,] such as her alleged memory loss and depression[,] fall[] under DI 23501.001." Doc. 7-7 at PageID 350, 355.

However, Dr. Haskins should not have applied that regulation to preclude Plaintiff's mental impairments from consideration because Plaintiff was not, in fact, convicted of a felony. *See* doc. 7-5 at PageID 151-52. Plaintiff's counsel submitted a letter, dated October 19, 2007, informing the Office of Disability Adjudication and Review of this mistake:

> This claim was essentially denied by BDD because they felt that her physical and mental impairments were the direct result of a felony neglect vehicular homicide which occurred in July 1998. I actually checked the Clark County Municipal Court website and verified that she indeed was charged with a third degree felony aggravated vehicular homicide but that was dismissed by the prosecutor on 8/5/98 and she plead no-contest to a first degree misdemeanor/vehicular homicide on 10/9/98 stemming [from] the same incident on 7/7/98…It is therefore apparent that the POMS or regulations regarding disability stemming from a felony conviction do not apply in this case since she was not in fact convicted of a felony but only a misdemeanor.

Doc. 7-6 at PageID 205-06. Plaintiff provided the Office with printouts from the Clark County Municipal Court's website showing that the vehicular homicide (third-degree felony) charge was

---

[3] Dr. Haskins based this decision on a policy in the SSA's Program Operations Manual System (POMS). DI 23501.001, part of the POMS, provides: "Any physical or mental impairment which arises or is aggravated (but only to the extent of the aggravation) in connection with an individual's commission of a felony after October 19, 1980, for which the individual is subsequently convicted, shall not be considered in determining whether the individual is under a disability under Title II. This exclusion applies regardless of whether the individual is incarcerated pursuant to conviction. The impairment or aggravation of an impairment must be excluded for the lifetime of the individual." (Copy attached hereto as Appendix.) 20 C.F.R. § 404.1506(a) likewise excludes "felony-related impairment[s]" from consideration in determining disability.

dismissed at the prosecutor's request, and instead, Plaintiff pled "no contest" to vehicular homicide (a first-degree misdemeanor), and these printouts are now part of the record.[4] *See* doc. 7-5 at PageID 151-52.

### B. The ALJ Committed Reversible Error

In evaluating the severity and effect of Plaintiff's mental impairments, the ALJ considered only the above-cited opinions of Dr. Knight and Dr. Haskins. With respect to Dr. Knight's opinion, the ALJ acknowledged her disability finding, but declined to give it controlling weight. Doc. 7-2 at PageID 65. Instead, the ALJ accepted the opinion of Dr. Haskins -- that Plaintiff had only "moderate" limitations in social functioning and concentration, persistence or pace, and could "perform simple and moderately complex tasks in a static setting away from others with no supervising or handling of complaints." *Id.* at PageID 62, 66. Ultimately, the ALJ determined that Plaintiff is capable of performing a reduced range of medium work. *See id.* at PageID 63-66.

The Court is troubled with the ALJ's decision to defer to the non-disability finding of Dr. Haskins, a non-examining, state consultative psychologist, who refused to consider most of Plaintiff's mental impairments on the erroneous assumption that she was convicted of a felony as a result of her car accident. Under Social Security regulations, the opinion of Plaintiff's treater, Dr. Knight, is presumptively "accorded the most deference" because of the "ongoing relationship between the patient and the opining physician." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Dr. Haskins, on the other hand, is presumptively "afforded the least deference," as she is a "non-examining source, who provide[d] an opinion based solely on review of [Plaintiff]'s existing medical records." *Id.*

---

[4] The Court notes that this letter from Plaintiff's attorney and counsel's accompanying documents were not available for Dr. Haskins' review, which occurred ten months prior.

The Court recognizes that it was not necessarily error for the ALJ to give greater weight to Dr. Haskins over Dr. Knight. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). "'In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.'" *Id.* (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 1996)). This may be true, for example, if "'the State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source.'" *Id.; see also Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007).

Here, however, the ALJ gave more weight to Dr. Haskins' opinion, but failed to mention that Dr. Haskins erroneously excluded Plaintiff's significant mental impairments in making her disability determination. *See* doc. 7-2 at PageID 57-70. *See Blakely*, 581 F.3d at 409; *Fisk*, 253 F. App'x at 585. Accordingly, the Court finds the ALJ improperly weighed the medical opinions in Plaintiff's case. Social Security regulations require an ALJ to evaluate the opinion of a non-examining, Stage agency psychological consultant by considering all relevant factors before deferring to that opinion over a treating source opinion. *See* 20 C.F.R. §§ 416.927(c), (e). Here, the ALJ relied on a flawed State agency consultative medical opinion in determining that Plaintiff was "not disabled," and failed to justify his reasoning for doing so. Therefore, the Commissioner's decision should be found unsupported by substantial evidence and reversed. *See Blakely*, 581 F.3d at 410; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's assignment of error is well-taken. This matter be remanded to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g). *See Faucher v.*

*Sec'y of Health & Human Servs.*, 17 F.3d 171, 173-76 (6th Cir. 1994). On remand, the Commissioner should obtain a new medical opinion -- from Dr. Haskins or other qualified medical professionals -- that considers Plaintiff's mental impairments which arose out of her motor vehicle accident on July 7, 1998.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's decision be found unsupported by substantial evidence and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

July 5, 2012                                            **s/Michael J. Newman**
                                                        United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report & Recommendation objected to and shall be accompanied by a memorandum in support of the objections. If the Report & Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

# APPENDIX A

Social Security Online
www.socialsecurity.gov

**POMS Section: DI 23501.001**

Search
Previous | Next

**Effective Dates: 01/14/2009 - Present**

**Subchapter Preview:**
NOTE: *The audience for all subchapters and sections in this chapter is as follows: DO/BO/TSC--OS, RR; PSC--CRTA, DE, DEC, DTE, IES, RECONR; ODO--DE, DEC, DS, RECONE; INTPSC--CATA, CIES, ERE, FCR, FDE, RECONE; DDS--ADJ, DHU*

**BASIC (01-09)**

# DI 23501.001 Prisoner Case Definitions and Restrictions

**Citations:**
Social Security Act, section 223(d)(6);
20 C.F.R. § 404.1506;
SSR 83-21

## A. Prisoner case definition of terms

### 1. Felony

An offense is considered a felony if:

   a. It is a felony under applicable law; or

   b. In a jurisdiction which does not classify any crime as a felony, it is an offense punishable by death or imprisonment for a term exceeding 1 year.

### 2. Correctional Facility

A facility under the control and jurisdiction of the agency in charge of the penal system or in which convicted criminals can be incarcerated for example, jails, prisons, or penal institutions.

### 3. Confinement

Confinement in correctional a facility continues as long as the individual is under a sentence of confinement and has not been released due to parole or pardon. An individual is considered confined even though temporarily or intermittently outside of the facility (e.g., on work release, attending school, or hospitalized). For information on when a Title II beneficiary is considered confined in a penal or correctional facility for conviction of a crime for purposes of suspension of Title II benefit payments, see GN 02607.000 Prisoner Provisions Title II.

### 4. Conviction

A conviction is the judgment in a criminal case that an individual is guilty of a crime. It may result from:

- a verdict or finding of guilty,
- a plea of guilty, or
- a plea of nolo contendere (no contest).

The status of a criminal case at the time of adjudication of the claim must be determined. **Unless the claimant is actually convicted of a felony committed after October 19, 1980, the prisoner provisions in this subchapter do not apply.**

**NOTE:** A grand jury indictment or any official act by a law enforcement agency merely charging an individual with a felony will not delay entitlement to or payment of benefits. However, if an individual is convicted of a felony but the conviction is under appeal, the prisoner provisions do apply.

## B. Restrictions on Title II disability determinations for convicted felons

Title II determinations of disability for persons convicted of a felony or confined for conviction of a felony are restricted as follows:

1. Any physical or mental impairment which arises or is aggravated (but only to the extent of the aggravation) in connection with an individual's commission of a felony after October 19, 1980, for which the individual is subsequently convicted, shall not be considered in determining whether the individual is under a disability under Title II. This exclusion applies regardless of whether the individual is incarcerated pursuant to conviction. The impairment or aggravation of an impairment must be excluded for the **lifetime** of the individual.

2. Any physical or mental impairment that arises or is aggravated (but only to the extent of the aggravation) in connection with the individual's confinement in a jail, prison, or other penal institution or correctional facility pursuant to his or her conviction of a felony committed after October 19, 1980, shall not be considered in determining whether the individual is under a disability under Title II for purposes of benefits payable for any month during which the individual is so confined.

   **NOTE:** These restrictions do not apply to Title XVI cases. For information about Title XVI prisoner provisions, see SI 02310.070 – Title XVI Prisoner/Inmate Suspensions.

## C. Other Title II restrictions affecting prisoners

### 1. Restriction on Title II student benefits

An individual shall not be considered a "full-time elementary or secondary school student" while that individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his or her conviction of a felony committed after October 19, 1980.

### 2. Suspension of Title II benefits to prisoners

For instructions on suspending Title II benefit payments to Title II beneficiaries confined to penal institutions for conviction of crimes, see GN 02607.000 Prisoner Provisions Title II.

## 3. Continuing Disability Review (CDR)

For instructions on Prisoner CDR cases, see DI 28065.000 Cases Involving Individuals convicted of a Felony.

To Link to this section - Use this URL:
http://policy.ssa.gov/poms.nsf/lnx/0423501001

DI 23501.001 - Prisoner Case Definitions and Restrictions - 01/14/2009
Batch run: 01/27/2009
Rev: 01/14/2009

USA.gov    Privacy Policy | Website Policies & Other Important Information